## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**ROBERT LEWIS JR.**, *on behalf of himself and others similarly situated*,

    Plaintiff,

**v.**

**EXCELLENCE FORWARD LLC**,

    Defendant.

**Civil Action No. 1:25-cv-3927-SDG**

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT EXCELLENCE FORWARD LLC'S MOTION TO STAY AND TO COMPEL ARBITRATION

Defendant Excellence Forward LLC ("Excellence Forward"), through counsel, respectfully submits this memorandum of law in support of its Motion to Stay and to Compel Arbitration:

## I.    INTRODUCTION

Plaintiff Robert Lewis Jr. alleges that he received unsolicited text messages from Excellence Forward in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c). While Plaintiff's TCPA claim is without merit, when he signed up to receive Excellence Forward's messages on April 10, 2025 on RewardZinga's website, Plaintiff also explicitly agreed in the Terms & Conditions

("Terms") to arbitrate any claims he may have about Excellence Forward's messages.

Accordingly, this case should be stayed and Plaintiff should be required to arbitrate his claims pursuant to the arbitration provision (the "Arbitration Agreement") in RewardZinga's Terms, which he agreed to twice on April 10, 2025. Pursuant to the Arbitration Agreement, Plaintiff agreed to arbitrate any dispute related to any emails, text messages or calls he received from RewardZinga and its marketing partners, including Excellence Forward, who was explicitly disclosed by name during the opt-in process. By the express terms of the Arbitration Agreement, this controversy must be resolved in arbitration instead of court.

Under the FAA, agreements to arbitrate are presumed to be valid and enforceable according to their terms. Indeed, the Supreme Court has repeatedly reaffirmed that the FAA strongly favors the validity and enforceability of arbitration agreements, and that the terms of such agreements must be vigorously enforced. *See Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232-33 (2013); *see also Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 532 (2012); *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011). This precedent makes clear that arbitration agreements, like the Arbitration Agreement here, must be enforced as

written. Thus, Excellence Forward respectfully requests that the Court enter an order directing Plaintiff to arbitrate his claims on an individual basis pursuant to the terms of the Arbitration Agreement and staying this case until arbitration is complete.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff's Agreement to RewardZinga's Terms and the Arbitration Agreement and Plaintiff's Consent to Receive Marketing Text Messages From Excellence Forward

Excellence Forward provides interested consumers with information concerning money-saving resources and promotional deals. *See* Declaration of Blaine Beichler ¶ 3, attached as **Exhibit 1**. RewardZinga provides marketing and rewards to consumers, such as gift cards, in exchange for the consumers' participation in promotional deals, and connects consumers with other available promotional deals through its third-party marketing partners, like Excellence Forward. *Id*. ¶ 4. RewardZinga secures its website visitors' consent to receive it and its third-party marketers' emails and text messages, among other activities. *Id*.

Here, on April 10, 2025, Plaintiff visited RewardZinga's website, and completed its marketing message opt-in process, through which Plaintiff consented to receive text messages from Excellence Forward and agreed to RewardZinga's Terms. *Id.* ¶¶ 8-9, 30-31.

Specifically, on April 10, 2025, Plaintiff visited a RewardZinga website, which advertised the possibility of getting "a $250 Visa Gift Card." *Id.* ¶¶ 10-12, 31. After answering a few preliminary questions about his shopping habits, *id.* ¶¶ 12-14, 31, Plaintiff was presented with the following screen, which prompted him to enter his email. *Id.* ¶ 15.



Plaintiff voluntarily entered his email and then clicked "Continue." *Id.* ¶¶ 15-17, 31. By doing so, Plaintiff agreed to RewardZinga's Terms, including the mandatory arbitration clause contained in the Terms, which the short agreement language between where he entered his email and chose to click "Continue" noted that the Terms included "mandatory arbitration." *Id.* ¶¶ 15-17, 31. Plaintiff could read the Terms in full by simply clicking the phrase "Terms & Conditions," which

was a hyperlink to RewardZinga's Terms, which were last modified on March 26, 2025. *Id*. ¶ 15; *id*. Exhibit A at 1.

After entering his email and clicking "Continue," Plaintiff was then presented with the following screen, on which he voluntarily entered his telephone number ((XXX) XXX-4154), and then clicked "Continue." *Id*. ¶¶ 18-19, 21-23, 31.



On April 10, 2025, by entering his telephone number and clicking "Continue," Plaintiff consented to receive marketing and transaction text messages from United Marketing Partners ("UMP") entities, including Excellence Forward, and reaffirmed that "I have read and agree to" RewardZinga's Terms, including the mandatory arbitration clause, which he explicitly agreed would apply to "**resolving disputes and TCPA claims**." *Id*. ¶¶ 18-19, 21-23, 31 (emphasis added). Here again, Plaintiff could read the Terms in full by simply clicking the phrase "Terms & Conditions," which was a hyperlink to RewardZinga's Terms, which were last modified on March 26, 2025. *Id*. ¶ 19; *id*. Ex. A at 1.

On that screen, the phrase "Unified Marketing Partners" appeared as a blue hyperlink to the below page, which lists Excellence Forward as a UMP entity:

### Subsidiary Hyperlink - Unified Marketing Partners

By providing your consent on the source page ("Source Page") of this hyperlinked page, you acknowledge your consent to be contacted, by the below listed entities, at the phone number you provided, for marketing and transactional messages via text and calls, which may use automated, manual, prerecorded or AI technology, which shall apply even if your number is on a Do-Not-Call list, until you revoke consent. You further acknowledge that the Terms and Conditions located on the Source Page contain provisions for **mandatory arbitration** and **waiver of class action lawsuits** for resolving disputes and by providing your consent on the Source Page, you acknowledge that the below listed entities may enforce the Terms and Conditions, including the above-referenced provisions, against you.

| | | | |
|---|---|---|---|
| ABA / American Benefit Alliance | ACTIVE / The Active Source | AWT / All Work Travel | CC7 / Cyber Cloud Seven |
| ECO / Go EcoGeek | EPO / Expecting Parents | EPRO / Excellence Forward | Famaid / My Family Aid |
| Home / Heavenly Home | HOAA / Homeowners Angels | HomeHelp / Home Helpers United | JET / Jet Quick |
| LyfeOG / Lyfe Off Grid | MPA / Maple Work Aid | Penny / Digital Penny Pincher | QUICK / Quick Space Now |
| RBEE / Red Bee | SPN / Select Preferred Network | TEXTR / Textr Online | TRN / True North |
| Vida / Better Vida | VSPT / Veteran Support Partners | ZIP / Zip Zip Zipper | |

*Note: Each of the names in the above list contain both the name of the entity (as shown after the forward slash) as well as the business' short name (as shown before the forward slash). Due to capacity restrictions, SMS messaging will contain only the business' short name.

*Id*. ¶ 20.

The relevant portions of RewardZinga's Terms and Arbitration Agreement, *id*. Ex. A, as they appeared on April 10, 2025 and which Plaintiff agreed to on April 10, 2025, state as follows:

- On the first page of RewardZinga's Terms, it states:

  These Terms contain a mandatory arbitration provision, as detailed below, that requires you to arbitrate, individually, **all disputes or claims that you may have with** us, **related parties, advertisers, including telemarketing partners, and persons with whom we share your personal information where you have given us your consent to do so ("Marketing Partners"), all of whom are third-party beneficiaries of the mandatory arbitration provision**. Thus, for example, if you provide prior express written consent to be contacted via telemarketing or SMS/text messaging, any claims that you may have regarding any telemarketing or SMS/text messages that you receive from us or our Marketing Partners are subject to the mandatory arbitration provision. The mandatory arbitration provision also waives your right to participate in a class action or multi-party arbitration. . . .

  ***For the avoidance of doubt and without limiting the foregoing, you agree to arbitrate any dispute related to any emails, text messages or telephone calls you may receive from us or our Marketing Partners in conjunction with your interactions with us, our Website, or any Website Promotions.***

*Id.* Ex. A. at 1-2 (emphasis added).

- The pertinent parts of the rest of the Arbitration Agreement state as follows:

  ***BY AGREEING TO THIS ARBITRATION AGREEMENT, YOU ARE GIVING UP YOUR RIGHT TO GO TO COURT, INCLUDING YOUR RIGHT TO A JURY TRIAL.*** **Should a dispute arise concerning** the Website, Website **Promotions**, Content, the terms and conditions of the Agreement or the breach of same by any

party hereto, including our Marketing Partners: (a) **the parties agree to submit their dispute for resolution by arbitration** . . .

**To the extent permitted by law, you agree that you will not bring, join or participate in any class action lawsuit as to any claim, dispute or controversy that you may have against Company and/or its employees, officers, directors, members, representatives and/or assigns, and its Marketing Partners as it relates to the Website**. . . .

*YOU UNDERSTAND THAT BY AGREEING TO THIS ARBITRATION AGREEMENT, WHICH CONTAINS THIS CLASS ACTION WAIVER, YOU MAY ONLY BRING CLAIMS AGAINST US AND OUR MARKETING PARTNERS IN AN INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS ACTION OR REPRESENTATIVE PROCEEDING.*

*Id*. Ex. A. at 6-7 (emphasis added).

Despite voluntarily entering his telephone number and agreeing to RewardZinga's Terms twice on April 10, 2025—including a mandatory arbitration clause for "resolving [] TCPA claims"—Plaintiff has filed this putative class action lawsuit instead of arbitrating his individual claim against Excellence Forward.

### B.    Plaintiff's Allegations Against Excellence Forward

Plaintiff filed his Complaint on July 15, 2025. Despite voluntarily providing his phone number and consenting to receive Excellence Forward's text messages, Plaintiff alleges that, in April 2025, Excellence Forward "delivered . . . a total of [12] text messages to [his] telephone number[,]" for which he allegedly "did not give [Excellence Forward] prior express consent or permission[.]" Compl. ¶¶ 12-

15, 19. He also alleges that the telephone number he voluntarily provided was registered on the National Do Not Call Registry ("NDNCR") when he received the text messages from Excellence Forward. *Id.* ¶ 16. Plaintiff asserts one claim against Excellence Forward for allegedly violating 47 C.F.R. § 64.1200(c), for which he claims a private right of action under 47 U.S.C. § 227(c)(5). *Id.* ¶¶ 2, 51-59.[1]

## III.   LEGAL STANDARD

Courts in the Eleventh Circuit treat motions to compel arbitration as Rule 12(b)(1) motions. *See Hunter v. Glob. Abbeville, LLC*, CIVIL ACTION FILE NO. 1:23-CV-3521-TWT, 2024 U.S. Dist. LEXIS 95716, at *7 (N.D. Ga. Jan. 24, 2024) ("District courts in the Eleventh Circuit have treated motions to compel arbitration as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).") (collecting cases); *Green v. Refundo, Inc. & Refundo, LLC*, CIVIL

---

[1] While this is an issue for the arbitrator, Plaintiff fails to state a claim under Subsection 227(c)(5) because his suit is only about text messages, not the "telephone calls" for which Congress created a private right of action.  *See, e.g.*, *Davis v. CVS Pharmacy, Inc*., No. 4:24-cv-477-AW-MAF, 2025 U.S. Dist. LEXIS 167366, at *3, *9 (N.D. Fla. Aug. 26, 2025) (acknowledging that "no ordinary person would think of a text message as a 'telephone call,'" and holding that to "succeed on his § 227(c)(5) [claim], Davis had to allege that he received at least two 'telephone calls.' He alleged receiving only text messages. And because text messages are not telephone calls, he has not stated a claim."); *see also Jones v. Blackstone Med. Servs., LLC*, No. 1:24-cv-01074-JEH-RLH, 2025 U.S. Dist. LEXIS 138371, at *9-10 (C.D. Ill. July 21, 2025) ("the Court agrees . . . that based on a plain reading of the TCPA and its implementing regulations, Section 227(c)(5) does not apply to text messages.").

ACTION FILE NO. 1:22-cv-02633-WMR, 2023 U.S. Dist. LEXIS 180294, at *4 (N.D. Ga. Feb. 13, 2023) ("The Eleventh Circuit treats a motion to compel arbitration as a Rule 12(b)(1) motion to dismiss for lack of subject matter consideration.") (citation omitted). As such, the Court may consider "matters outside the pleadings, such as testimony and affidavits[.]" *Hunter*, 2024 U.S. Dist. LEXIS 95716, at *7 (citation omitted).

"Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of [arbitration] agreements." *Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001) (citation omitted). Whether an arbitration agreement exists is "simply a matter of contract." *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (citation omitted).

Finally, when determining whether a court may order a party to arbitrate even if it is not a signatory to the arbitration agreement, courts apply "traditional principles" of the State's contract law governing the agreement. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009). These principles include "incorporation by reference, **third-party beneficiary theories**, waiver and estoppel." *Id.* (emphasis added) (citation omitted). Under New York law, "an arbitration agreement may be enforced in favor of third-party beneficiaries." *Castillo v. Altice USA, Inc.*, Case No. 1:23-cv-05040 (JLR), 2023 U.S. Dist.

10

LEXIS 224924, at *14 (S.D.N.Y. Dec. 14, 2023) (quoting *Gerszberg v. Li & Fung (Trading) Ltd.*, 215 F. Supp. 3d 282, 288 (S.D.N.Y. 2016)); *see also Elliott v. Leatherstocking Corp.*, 3:10-cv-934, 2011 U.S. Dist. LEXIS 40722, at *34 (N.D.N.Y. Apr. 14, 2011) ("Under New York law, a contractual promise can be enforced by a non-party who is an intended third-party beneficiary of that promise." (quoting *Consolidated Edison, Inc. v. Northeast Utilities,* 426 F.3d 524, 527 (2d Cir. 2005))).  An entity is a third-party beneficiary to a contract when there exists "a valid and binding contract between other parties, [and] the contract was intended for" the third party's benefit. *Id*. (quoting *Mendel v. Henry Phipps Plaza West, Inc.*, 6 N.Y.3d 783, 784 (2006)). "The touchstone of third-party beneficiary status is the intent of the parties to the agreement." *In re Generali COVID-19 Travel Ins. Litig.*, 577 F. Supp. 3d 284, 292 (S.D.N.Y. 2021) (citation omitted); *see also Hines v. 1025 Fifth Ave., Inc.*, 14 Civ. 3661 (SAS), 2015 U.S. Dist. LEXIS 21497, at *5-6 (S.D.N.Y. Feb. 23, 2015) (An individual is a third-party beneficiary to a contract where "the parties to the contract intended to confer a benefit on the third-party[.]") (citation omitted).

## IV.  ARGUMENT

### A.  The Court Should Issue an Order Compelling Arbitration.

The FAA provides that

[a] party aggrieved by the alleged failure . . . of another to arbitrate under a written agreement for arbitration may petition any United States district

court which, save for such agreement, would have jurisdiction . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. Section 2 of the FAA mandates that binding arbitration agreements in contracts "evidencing a transaction involving commerce. . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract,'" such that "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *AT&T Mobility*, 563 U.S. at 339 (citation modified); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts[.]").[2] "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also Perry v. Thomas*, 482 U.S. 483, 490 (1987) (stating that arbitration

---

[2] The Supreme Court has made clear that the FAA is extremely broad and applies to any transaction directly or indirectly affecting interstate commerce. *See, e.g.*, *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003); *see also Allied-Bruce Terminix Cos. Inc. v. Dobson*, 513 U.S. 265, 277 (1995). There is no question that the activities at issue here involve interstate commerce. Plaintiff is a Georgia resident, Compl. ¶ 6, while Excellence Forward is a Texas limited liability company headquartered in Dallas, Texas. *Id*. ¶ 7.

agreements falling within the scope of the FAA "must be 'rigorously enforce[d]'")
(citations omitted). "[A]ny doubts concerning the scope of arbitrable issues should
be resolved in favor of arbitration[.]" *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-
25.

The FAA requires arbitration to be compelled "upon a showing that (a) the
plaintiff entered into a written arbitration agreement that is enforceable 'under
ordinary state-law' contract principles and (b) the claims before the court fall
within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195
(11th Cir. 2008) (citing 9 U.S.C. §§ 2-4).

This Court should issue an order compelling arbitration because: (i) the
Arbitration Agreement is a valid, enforceable agreement between Plaintiff and
Excellence Forward to submit disputes to binding arbitration, (ii) Excellence
Forward is a named and intended third-party beneficiary to the Arbitration
Agreement; and (iii) this case is a controversy between Plaintiff and Excellence
Forward that is subject to the Arbitration Agreement.

**B.    Plaintiff's Agreement to the Terms and Arbitration Agreement is Valid Under New York Law.**

An arbitration agreement governed by the FAA, like the Arbitration
Agreement here, is presumed to be valid and enforceable. *See Shearson/Am.*
*Express v. McMahon*, 482 U.S. 220, 226 (1987); *see also Mitsubishi Motors Corp.*
*v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-27 (1985). The Arbitration

Agreement at issue here is valid under applicable law and, thus, must be enforced as written.

RewardZinga's Terms, which Plaintiff agreed to and which includes the Arbitration Agreement, is expressly governed by New York law. *See* Beichler Decl. Ex. A at 6.[3] Thus, while the FAA governs the enforceability of the Arbitration Agreement, New York law governs whether a valid agreement to arbitrate exists. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.").

RewardZinga's Terms, including the Arbitration Agreement, and Plaintiff's agreement to the Terms, are valid under New York law because Plaintiff (i) had constructive notice of the Terms and (ii) manifested his assent to them when he voluntarily entered his email address and clicked the first "Continue" button stating he agreed to the Terms, and reaffirmed his assent when he then voluntarily entered his telephone number and clicked the second "Continue" button. *See Zachman v. Hudson Valley Fed. Credit Union*, 49 F. 4th 95, 102 (2d Cir. 2022) (To form a

---

[3] *See Becham v. Synthes USA*, 482 Fed. Appx. 387, 390-91 (11th Cir. 2012) ("A choice-of-law clause is generally enforceable in Georgia." (citing *Carr v. Kupfer*, 296 S.E.2d 560, 562 (Ga. 1982))).

contract under New York law, there must be "a meeting of the minds and a manifestation of mutual assent.") (citation omitted).

Under New York law, an offeree is bound by contractual terms of which he or she has actual or inquiry notice and "assents to them through conduct that a reasonable person would understand to constitute assent." *Id*. (citation omitted). Courts look to whether the contract terms were "obvious and whether [they were] called to the offeree's attention" to determine whether the offeree was "on inquiry notice of [the] contract terms[.]" *Id*. (citation omitted). Those contract law principles apply to "online transactions." *Id*.

A "clickwrap" agreement is a common type of agreement that companies use for obtaining consumer agreement to their online terms of service. *See Sollinger v. SmileDirectClub, LLC*, 19-CV-5977 (JPO), 2020 U.S. Dist. LEXIS 27168, at *5 (S.D.N.Y. Feb. 18, 2020) (citation omitted). As part of a "clickwrap" agreement, a website "user must click 'I agree,' [or similar language,] but not necessarily view the contract to which []he is assenting." *Id*. (citation omitted); *see also Zachman*, 49 F. 4th at 103 ("We have consistently upheld [clickwrap agreements] because the user has affirmatively assented to the terms of the agreement by clicking 'I agree' or similar language."). "[C]lickwrap agreements are valid and enforceable contracts" under New York law. *Sollinger*, 2020 U.S. Dist. LEXIS 27168, at *5  (quoting *Whitt v. Prosper Funding LLC*, No. 15-CV-

136, 2015 U.S. Dist. LEXIS 91413, at *9 (S.D.N.Y. July 14, 2015)); *see also Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) (noting that "'[c]ourts around the country have recognized that [an] electronic 'click' can suffice to signify the acceptance of a contract,' and that '[t]here is nothing automatically offensive about such agreements, as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement.'" (quoting *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033-34 (7th Cir. 2016))). [4]

Here, RewardZinga's process for having Plaintiff agree to its Terms online is an enforceable type of clickwrap agreement. When agreeing to RewardZinga's Terms on an uncluttered screen, Plaintiff was clearly and conspicuously informed that "[by] clicking Continue, . . . [he] agree[d] to [RewardZinga's] Terms & Conditions, including mandatory arbitration[.]" Beichler Decl. ¶ 15. Thus, Plaintiff had to affirmatively assent to RewardZinga's Terms by entering his email and clicking "Continue." *Id*. RewardZinga's Terms could be accessed by clicking the prominently distinguished blue, underlined, and hyperlinked "Terms & Conditions" link that was located in the clear and conspicuous space directly between where he entered his email and clicked "Continue." *Id*. The Terms

---

[4] *See also Rahim v. Chime Fin., Inc.*, CIVIL ACTION NO. 1:22-cv-03209-WMR, 2022 U.S. Dist. LEXIS 236802, at *6 (N.D. Ga. Nov. 14, 2022) (enforcing online clickwrap agreement, and observing that "Georgia courts have generally ruled that arbitration clauses contained in [clickwrap] agreements are enforceable.") (collecting cases).

provided explicit, bolded notice of the Arbitration Agreement on the first page. *Id.* Ex. A.

Then, on the following uncluttered screen, Plaintiff was *again* clearly and conspicuously informed that "[b]y selecting 'Continue' . . . [he] agree[d] to [RewardZinga's] Terms & Conditions, including mandatory arbitration, for resolving disputes and TCPA claims." *Id.* ¶ 18. RewardZinga's Terms could again be accessed by clicking the blue, underlined, and hyperlinked "Terms & Conditions" link that was located in the clear and conspicuous space directly between where Plaintiff entered his telephone number and clicked "Continue." *Id.* ¶¶ 18-19. Thus, by clicking the second "Continue" button, Plaintiff re-affirmed his assent to the Terms, which the clear terms explicitly noted "include[ed] mandatory arbitration, for resolving disputes and TCPA claims." *Id.* ¶ 18.[5]

The clear and conspicuous language on both the first and second opt-in screens put Plaintiff on notice of RewardZinga's Terms, and that by clicking "Continue," he was agreeing to them. *Id.* ¶¶ 15, 18-19. Plaintiff then manifested his assent to RewardZinga's Terms *twice*, first by entering his email and then clicking "Continue," and then again by entering his telephone number and clicking "Continue" on the next page. *Id.* ¶ 31.

---

[5] On that screen, if Plaintiff clicked "Click here" instead of "Continue," RewardZinga would not have provided Excellence Forward with his contact information. *See* Beichler Decl. ¶ 23.

RewardZinga's process for acquiring Plaintiff's agreement to its Terms is similar to—and clearer than—many other online agreements that have been enforced by the Second Circuit and New York courts. *See, e.g, Meyers*, 868 F.3d at 74, 76, 80 (holding the plaintiff "unambiguously manifested his assent to Uber's Terms of Service as a matter of California law" (noting "that New York and California apply substantially similar rules for determining whether the parties have mutually assented to a contract term"),[6] by clicking "a button marked 'Register,' underneath which the screen state[d] 'By creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY,' with hyperlinks to the Terms of Service and Privacy Policy."); *Hamm v. Capsule Corp.*, 22-cv-05435 (JSR), 2022 U.S. Dist. LEXIS 173613, at *3-11 (S.D.N.Y. Sept. 26, 2022) (holding the defendant's terms "were reasonably conspicuous and" the plaintiff "agreed to them" where the plaintiff assented to the defendant's terms by entering her "email address and clicking a 'CONTINUE' button, immediately below which Capsule display[ed] the message: 'By clicking continue, I accept the Capsule Terms of

---

[6] *See Pincaro v. Glassdoor, Inc.*, 16 Civ. 6870 (ER), 2017 U.S. Dist. LEXIS 147517, at *12 (S.D.N.Y. Sept. 12, 2017) (noting that New York, California, and Georgia "apply substantially similar rules for determining whether the parties have mutually assented to a contract term[,]" and "[w]hich state's law applies is therefore of no moment.") (citation modified).

Service, Privacy Policy, and HIPAA Policy.'").[7] This Court should likewise find

that the Terms Plaintiff agreed to here are an enforceable and binding contract.

> **C.    Excellence Forward is an Intended Third-Party Beneficiary to RewardZinga's Terms and Arbitration Agreement Under New York Law.**

Excellence Forward is entitled to enforce the Arbitration Agreement here.

*See Arthur Andersen LLP*, 556 U.S. at 631. "[T]raditional principles" of state law

allow a contract to be enforced by or against nonparties to the contract through

---

[7] *See also Whitt*, 2015 U.S. Dist. LEXIS 91413, at *9-10 (finding a clickwrap agreement that required the plaintiff "to click a box adjacent to the bolded text '**Clicking the box below constitutes your acceptance of** . . . the borrower registration agreement,' where the term 'borrower registration agreement' was conspicuously rendered as a hyperlink to the Agreement itself[,]" placed the plaintiff "at least [on] constructive knowledge of the terms of the Agreement and that he assented to those terms. Thus [the defendant] [] demonstrated that [the plaintiff] accepted the terms of the Agreement, including its arbitration provision[.]"); *see also Brodsky v. Match.com LLC*, No. 09 Civ. 5328(NRB), 2009 U.S. Dist. LEXIS 101167 (S.D.N.Y. 2009) (enforcing a forum selection clause the plaintiff agreed to on Match.com's website by checking "a box on the website affirming 'I agree to the Match.com terms of use,' which statement [wa]s hyperlinked to a complete copy of the 11-page User Agreement."); *Eslworldwide.com, Inc. v. Interland, Inc*., No. 06 CV 2503 (LBS), 2006 U.S. Dist. LEXIS 41935, at *4 (S.D.N.Y. June 21, 2006) (finding that plaintiff was bound to a forum selection clause where the text above a clickable "Accept" icon stated that, by clicking it, a user was bound to the terms of service which included the forum selection clause); *Hanson v. Experian Info Sols., Inc.*, CIVIL ACTION FILE NO. 1:23-C V-4564-MHC-CMS, 2024 U.S. Dist. LEXIS 132039, at *3-4, 32 (N.D. Ga. July 22, 2024) (holding, under Georgia law, that a valid arbitration agreement was formed where the defendant's website required the plaintiff "to enter his personal information and [then] click 'Create Your Account[,]'" and between where the plaintiff "was required to enter his information and the 'Create Your Account' button" it stated "**By clicking 'Create Your Account': I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy and Ad Targeting Policy**.").

"incorporation by reference, **third-party beneficiary theories**, waiver and estoppel[.]" *Id.* (emphasis added). Because RewardZinga's Terms contain a choice-of-law provision, *see* Beichler Decl. Ex. A at 6, this Court should apply New York contract law to assess Excellence Forward's status as a third-party beneficiary to the Terms and its Arbitration Agreement. *See Employers Ins. of Wausau*, 251 F.3d at 1322 ("Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of [arbitration] agreements.") (citation omitted).

Under New York law, an entity is an intended third-party beneficiary to a contract when (1) "a valid and binding contract [exists] between other parties, [(2)] that [] contract was intended for [the entity's] benefit and [(3)] [] the benefit to [it] is sufficiently immediate[.]" *Elliot*, 2011 U.S. Dist. LEXIS 40722, at *34 (quoting *Mendel,* 6 N.Y.3d at 784). Further, "[t]he touchstone of third-party beneficiary status is the intent of the parties to the agreement." *In re Generali COVID-19 Travel Ins. Litig.*, 577 F. Supp. 3d at 292 (citation omitted); *see also Hines*, 2015 U.S. Dist. LEXIS 21497, at *5-6 (An individual is a third-party beneficiary to a contract where "the parties to the contract intended to confer a benefit on the third party[.]") (citation omitted).

The Arbitration Agreement expressly states that Plaintiff is required to "arbitrate, individually, all disputes and claims" Plaintiff has with RewardZinga,

"related parties, advertisers, including telemarketing partners, and persons with whom [RewardZinga] shares [Plaintiff's] personal information where [Plaintiff] ha[s] given [RewardZinga] consent to do so ('Marketing Partners'), all of whom are third-party beneficiaries of the mandatory arbitration provision." *See* Beichler Decl. Ex. A at 1.

On the second opt-in screen where Plaintiff entered his telephone number and clicked "Continue," there is clear and conspicuous language stating that "[b]y selecting "Continue", [Plaintiff] provide[s] [his] ESIGN signature and express consent for RewardZinga [and] Unified Marketing Partners[] . . . to contact [him] at the phone number [he] provided for marketing and transactional messages via text and calls[.]" *Id*. ¶ 18. The Unified Marketing Partners was a hyperlink to a page that listed Excellence Forward as one of the UMP entities. *Id*. ¶ 20. Thus, Plaintiff consented to RewardZinga providing his telephone number to Excellence Forward and was on notice that Excellence Forward was one of RewardZinga's Marketing Partners that was an explicit third-party beneficiary to the Arbitration Agreement included in the Terms.[8]

---

[8] Excellence Forward is also a Marketing Partner of RewardZinga and thus a third-party beneficiary to the Arbitration Agreement because it is an advertiser and/or telemarketing partner of RewardZinga. *Id*. ¶ 3 ("Excellence Forward partners with RewardZinga to receive contact information of consumers who consented to receive information and offers from RewardZinga and its third-party marketing partners like Excellence Forward.").

Where a party is explicitly incorporated into the terms of a binding arbitration clause, it is a third-party beneficiary to the agreement under New York law. *See Curtis v. JPMorgan Chase Bank, N.A*., 2024 U.S. Dist. LEXIS 14684, at *20 (S.D.N.Y. Jan. 25, 2024) (finding that where an arbitration provision applied to claims against the signatory and its "parent, subsidiaries, affiliates, [and] licensees," the agreement "expressly ma[d]e [the affiliate] a third-party beneficiary," even though the affiliate was not expressly named).[9] Indeed, the "identity of a third-party beneficiary need not be set forth in the contract or, for that matter, even be known as of the time of its execution." *MK West Street Co. v. Meridien Hotels, Inc.*, 584 N.Y.S.2d 310, 312 (N.Y. App. Div. 1992) (citation omitted). Instead, the third-party beneficiary must simply be one of "a class of persons intended to be benefited." *981 Third Ave. Corp. v. Beltramini*, 485 N.Y.S.2d 535, 538 (N.Y. App. Div. 1985). As Excellence Forward is a named marketing partner of RewardZinga, *see* Beichler Decl. ¶¶ 18, 20, 26, it is a third-

---

[9] *See also Akpele v. Pac. Life Ins. Co.*, 646 Fed. Appx. 908, 912-13 (11th Cir. 2016) ("[N]on-signatories to an agreement are bound by arbitration clauses in only limited circumstances. . . . Third-party beneficiary status is one exception to the non-signatory rule under Georgia law.") (citation modified); *Lankford v. Orkin Exterminating Co*., 266 Ga. App. 228, 229 (2004) ("The general law provides that a beneficiary need not be specifically named in a contract, so long as the contract shows that it was intended for the third-party's benefit." (citing *Northen v. Tobin*, 262 Ga. App. 339, 344 (2003))).

party beneficiary to the Term's Arbitration Agreement under New York law, and may enforce the terms of the Arbitration Agreement agreed to by Plaintiff.

**D.    Plaintiff's Claims Fall Squarely Within the Scope of the Arbitration Agreement.**

Where, as here, the parties have a valid arbitration agreement, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech., Inc. v. Commc'ns Workers of Am*., 475 U.S. 643, 650 (1986). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Mitsubishi Motors*, 473 U.S. at 626. Where the arbitration clause is broad, there is a heightened presumption of arbitrability: "[in] the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Tech*., 475 U.S. at 650 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co*., 363 U.S. 574, 584-85 (1960)).

The Arbitration Agreement here encompasses "all disputes or claims" Plaintiff may have with RewardZinga's Marketing Partners, of which Excellence Forward is one, concerning text messages received from RewardZinga's Marketing Partners, like Excellence Forward. Beichler Decl. Ex, A at 1; *id*. ¶¶ 18, 20, 26. The Arbitration Agreement expressly provides that:

> [A]ny claims [Plaintiff has] regarding any telemarketing or SMS/text
> messages that [he] receives from [RewardZinga] or [its] Marketing
> Partners are subject to the mandatory arbitration provision. . . . *For
> the avoidance of double and without limiting the foregoing,
> [Plaintiff] agree[s] to arbitration any dispute related to any emails,
> text messages or telephone calls [Plaintiff] may receive from
> [RewardZinga] or [its] Marketing Partners in conjunction with your
> interactions with us, our Website, or any Website Promotions.*"

*Id.* That language clearly covers the dispute at issue here because Plaintiff's claim

arises from his alleged receipt of multiple marketing text messages from

Excellence Forward, which were only sent to Plaintiff because of his interactions

with RewardZinga's relevant website. *See* Compl. ¶ 12 (Plaintiff's claim arises

from his alleged receipt of multiple text messages from Excellence Forward in

April 2025); *see* Beichler Decl. ¶¶ 34-35 (Excellence Forward sent text messages

to Plaintiff's phone number promptly after RewardZinga provided notice of

Plaintiff's opt-in). Thus, Plaintiff's claim falls squarely within the Arbitration

Agreement's scope.

### E.    The Action Must be Stayed Pending Arbitration.

Section 3 of the FAA expressly provides that, where a valid arbitration

agreement requires a dispute to be submitted to binding arbitration, the district

court "shall . . . stay the trial of the action until such arbitration has been had in

accordance with the terms of the agreement[.]" 9 U.S.C. § 3. Indeed, "[w]hen § 3

says that a court 'shall . . . stay' the proceeding, the court must do so." *Smith v.

Spizzirri¸* 601 U.S. 472, 476 (2024); *id.* at 478 ("When a district court finds that a

lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."). Because Plaintiff must be compelled to arbitrate his claim against Excellence Forward, the action should be stayed pending completion of arbitration.

## V.    CONCLUSION

Given Plaintiff's clear assent to RewardZinga's Arbitration Agreement, to which Excellence Forward is an intended third-party beneficiary, the Court should grant this Motion, order Plaintiff to arbitrate his dispute, and stay the action pending completion of arbitration.

Dated: September 10, 2025            Respectfully submitted,

BERMAN FINK VAN HORN P.C.

By:   */s/Benjamin I. Fink*
Benjamin I. Fink
Georgia Bar No. 261090
3475 Piedmont Road, N.E., Suite 1640
Atlanta, Georgia 30305
(404) 261-7711
bfink@bfvlaw.com
*Counsel for Defendant*
*Excellence Forward LLC*

## LOCAL RULE 7.1(D) CERTIFICATION

This Memorandum was prepared with size 14 Times New Roman font, which is an allowed font size and type under Local Rule 7.1(C).

By:    */s/Benjamin I. Fink*
Benjamin I. Fink
Georgia Bar No. 261090

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 10th day of September, 2025, a copy of the foregoing document was served via this Court's Electronic Case Filing (ECF) system upon:

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln St., Suite 2400
Hingham, MA 02043
Email: anthony@paronichlaw.com

Valerie Lorraine Chinn
Chinn Law Firm, LLC
245 N. Highland Ave., Suite 230 #7
Atlanta, GA 30307
Email: vchinn@chinnlawfirm.com

*Counsel for Plaintiff*

By:    */s/Benjamin I. Fink*
Benjamin I. Fink
Georgia Bar No. 261090