## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**ROBERT LEWIS JR.**, *on behalf of himself and others similarly situated*,

      Plaintiff,

**v.**

**EXCELLENCE FORWARD LLC**,

      Defendant.

**Civil Action No. 1:25-cv-3927-SDG**

## REPLY IN SUPPORT OF
## DEFENDANT EXCELLENCE FORWARD LLC'S
## MOTION TO STAY AND TO COMPEL ARBITRATION

Defendant Excellence Forward LLC ("Excellence Forward"), through counsel, respectfully submits this Reply in Support of its Motion to Stay and to Compel Arbitration ("Motion"), Dkt. No. 12.

### I.    Plaintiff Failed to Sufficiently Refute his Agreement to Arbitrate.

Plaintiff futilely seeks to avoid having to arbitrate his claims against Excellence Forward through a self-serving, conclusory declaration unsupported by *any* corroborating evidence. Plaintiff simply denies that he was the person that submitted his telephone number—which he concedes is accurate—and agreed to RewardZinga's Terms. *See* Declaration of Robert Lewis, Jr., Dkt. No. 14-1, ¶¶ 7-10, 12. But Plaintiff's unsubstantiated denial is insufficient to overcome the

substantial, admissible evidence contained in Excellence Forward's Motion demonstrating he was the one who submitted his telephone number to RewardZinga and agreed to its Terms on April 10, 2025.

The cases Plaintiff cites in his Opposition to Defendant's Motion to Compel Arbitration ("Opposition"), Dkt. No. 14, at 8, demonstrate his declaration's inadequacies. Plaintiff cites *Hobbs v. Apollo Interactive, Inc.*, No. 4:19-CV-57 (CDL), 2019 U.S. Dist. LEXIS 216357 (M.D. Ga. Dec. 17, 2019), which he mistakenly refers to as *this* "Court's decision[.]" Opp'n at 9-10. In *Hobbs*, the plaintiff provided corroborating, third-party evidence showing that he was far from the location of the captured IP address when the defendant obtained his alleged consent. 2019 U.S. Dist. LEXIS 216357, at *4-5. But here, Plaintiff provides no such evidence.

The only thing supporting Plaintiff's denial is his claim that he "reviewed [his] internet history, which does not include a visit to" the relevant RewardZinga website. Lewis Decl. ¶ 11. But Plaintiff provides no details about why that alleged inquiry *should have* revealed his visit to RewardZinga's site on April 10, 2025. He makes no mention of which devices he used to access the Internet that day, whether he reviewed all such devices' history, whether he uses private-browsing modes or browsers or even keeps or deletes his browsing history since that date. Unlike the corroborating, third-party evidence in *Hobbs*, here, Plaintiff's question-

begging internet-history claim is woefully insufficient to serve as a basis to deny Excellence Forward's Motion.

Plaintiff also cites *Conrad v. Camping World Holdings Inc.*, Case No. 4:24-cv-171-CLM, 2025 U.S. Dist. LEXIS 6373 (N.D. Ala. Jan. 9, 2025). But *Conrad* is inapposite here. There, the plaintiff provided evidence that the relevant telephone number was not his at the time it was provided to the defendant. *Id*. at *5-6. But here, Plaintiff admits that the telephone number at issue was his when it was provided to RewardZinga. S*ee* Lewis Decl. ¶ 12; *see also* Complaint ¶ 9 ("Plaintiff uses, and since October 2024 has used, telephone number (XXX) XXX-4154.").

The other statements in Plaintiff's declaration provide no more basis for precluding his claims from being compelled to arbitration than the cases he cites. For example, Plaintiff claims he has never seen RewardZinga's Terms "before this litigation." Lewis Decl. ¶ 7. But that is just an admission that he voluntarily agreed to the Terms without reviewing them; not a basis for finding he didn't agree to them. *See Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711, 725 (E.D.N.Y. 2017) (Recognizing that a party's "failure to read a contract is not a defense to contract formation.").

The irrelevant statements and denials of non-existent allegations contained in Plaintiff's declaration further demonstrate its insufficiency. For example, Plaintiff states that "Defendant claims I submitted information to RewardZinga on

April 10, 2025. That is false. At that date and *time*, I did not access any RewardZinga site." Lewis Decl. ¶ 10 (emphasis added). But Excellence Forward's Motion does not identify time. Then Plaintiff claims he did not enter his "*name, email address, or phone number*" and "[a]part from my telephone number, the other information Defendant relies on is not mine." *Id.* ¶¶ 10, 12 (emphasis added). But Excellence Forward has not claimed that Plaintiff entered his name or that it is relying on information other than his telephone number. Finally, Plaintiff claims he has two credit cards and he does "not need to obtain additional credit cards." *Id.* ¶ 13. The relevant RewardZinga website offered Plaintiff the opportunity to obtain a $250 *gift card* and says nothing about credit cards. *See* Motion at 4. Thus, Plaintiff's credit-card tangent is irrelevant and nonsensical. Plaintiff's denials of factual contentions Excellence Forward *never even made* and irrelevant statements suggest that Plaintiff signs whatever he's asked to sign without any careful review.

These declaration inadequacies leave Plaintiff with nothing more than a bald denial that he is the person who agreed to RewardZinga's terms. With only that bald denial, Plaintiff fails to meet his burden to "*offer some evidence to substantiate the denial*[;] . . . a party resisting arbitration [must] substantiate[] the denial of the contract with enough evidence to make the denial colorable." *Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 Fed. Appx. 782, 785

(11th Cir. 2008) (citation modified) (emphasis added).[1] Due to Plaintiff's failure to substantiate his denial with any evidence, this Court can and should find that Plaintiff agreed to the Arbitration Agreement without holding a trial on that issue.

## II. Excellence Forward is Plainly an Intended Third-Party Beneficiary of the Arbitration Agreement.

Plaintiff next argues that Excellence Forward cannot enforce the Arbitration Agreement because it was not an "intended" beneficiary. *See* Opp'n at 7-8. But again, the cases Plaintiff cites do not support his argument. In *Fourth Ocean*

---

[1] Faced with the insufficiency of his unsupported denial, Plaintiff resorts to attacking Excellence Forward for not providing the IP address associated with his agreement to Terms. *See* Opp'n at 6. But there is good reason for that: an IP address is not a reliable source for determining a person's location. *See United States v. Trader*, 981 F.3d 961, 968 (11th Cir. 2020) (recognizing that IP addresses are not "location records."). For example, within the widely used dynamic IP address-assignment process, internet service providers ("ISPs") have long been using their available pool of IP addresses to temporarily assign IPs to user devices dynamically and on a non-static-IP basis when internet access is requested by that particular device for that particular usage session. *See* Tim Lachance, *"IP" So Facto? Not So Fasto: Why IP Addresses Should Not Be Considered PII*, 58 IDEA 303, 307 (2018). Under this system, ISPs randomly assign IP addresses when a device connects to the internet, and an IP address will only identify a machine using an IP address at a particular time. *Id.*; *see also, e.g.*, *Wikimedia Found. v. NSA/Central Sec. Serv.*, 427 F. Supp. 3d 582, 594 n.21 (D. Md. 2019) ("[R]esidential Internet customers ordinarily get exactly one 'dynamic' IP address at a time, which is assigned on a temporary basis by their ISP. Dynamic IP addresses may be assigned for a day, an hour, or some other period of time depending on the needs, resources, and business practices of a particular ISP, after which the dynamic IP addresses are assigned to other customers."); *State v. Fuller*, 332 P.3d 937, 942 (Utah 2014) (ISP data needed to identify who was using a given IP at any given time for a given internet session). On top of the fixed and mobile ISPs' dynamic-IP-assignment practices, there are of course many internet users who use tools like VPNs and private relays, like Apple's iCloud Private Relay, that also make IPs an irrelevant tool for location-identification purposes.

*Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 45 (1985),[2] the court recognized that a "third party's right to enforce [a] contract" exists when "the language of the contract [] clearly evidences an intent to permit enforcement by the third party." That is obviously the case here: the first page of the Terms clearly and expressly states that it requires Plaintiff to arbitrate "all disputes or claims that you may have with [] related parties, *advertisers, including telemarketing partners*, *and persons with whom we share your person information where you have given us your consent to do show ('Marketing Partners')*," of which Excellence Forward is one, "all of whom *are third-party beneficiaries of the mandatory arbitration provision*[,]" and "[f]or the avoidance of doubt . . . you agree to arbitrate any dispute related to any emails text messages or telephone calls you may receive from [] *our Marketing Partners*[.]"  Declaration of Blaine Beichler (Dkt. No. 12-2) ¶¶ 3-4; *id*. Exhibit A at 1-2 (emphasis added).

Plaintiff points to the last sentence of the preceding paragraph in the Terms, which states that "[n]o provision of these Terms or modifications thereof shall create any rights in or benefits to any third party." *Id.* at 1. But Plaintiff can find no

---

[2] The other case Plaintiff cites in support of that argument is *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173 (2011). There, at the pleading stage, the court found that the plaintiff could not show that it was an intended third-party beneficiary of the relevant contact due to its failure to plead "the pertinent terms of the purported agreement." *Id.* at 182. But here, Excellence Forward *has* provided the pertinent terms of the Arbitration Agreement. Those terms make clear that Excellence Forward, as a RewardZinga Marketing Partner, is an intended third-party beneficiary of the Arbitration Agreement.

support in that general clause because the Terms' specific, third-party-beneficiary language controls over that general, boilerplate language. *See N. Am. Airlines v. Wilmington Trust Co.*, 602985-2009, 2010 N.Y. Misc. LEXIS 2319, at *9 (May 21, 2010) (while "an agreement may contain 'a general provision disclaiming the existence of any third-party beneficiaries, such disclaimer is belied by the Agreement's specific grant of benefits[.]'") (citation omitted).[3]

Finally, despite the fact that RewardZinga's opt-in flow makes clear that Excellence Forward is a RewardZinga Marketing Partner and thus an intended third-party beneficiary of the Arbitration Agreement, *see* Motion at 5-6, Plaintiff argues Excellence Forward is not because it was "neither conspicuously identified nor expressly accepted" in the Terms. Opp'n at 7-8. But Plaintiff's argument fails to consider the fact that the "identity of a third-party beneficiary need not be set forth in the contract or, for that matter, even be known as of the time of its execution." *MK West Street Co. v. Meridien Hotels, Inc.*, 584 N.Y.S.2d 310, 313 (N.Y. App. Div. 1992) (citation omitted). Instead, the third-party beneficiary must

---

[3] *See e.g.*, *Wade Park Land Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335, 393 (S.D.N.Y. 2022) (Under New York law, when "there is tension between provisions, the more specific governs over the general." (quoting *DBT Gmbh v. J.L. Min. Co.*, 544 F. Supp. 2d 364, 378 (S.D.N.Y. 2008))); *Diamond Castle Partners IV PRC, L.P. v IAC/InterActiveCorp*, 82 A.D.3d 421, 422 (2011) (holding that specific third-party-beneficiary language controlled over the general, boilerplate no-third-party-beneficiary language because "to construe the purchase agreement" the opposite way "would be to ignore the clear, specific provisions of the purchase agreement recognizing plaintiffs' rights under the agreement, which we decline to do[.]") (citation omitted).

simply be one of "a class of persons intended to be benefited." *981 Third Ave. Corp. v. Beltramini*, 485 N.Y.S.2d 535, 538 (N.Y. App. Div. 1985). Excellence Forward is plainly a RewardZinga Marketing Partner. *See* Beichler Decl. ¶¶ 3-4. Thus, it is within the class of persons intended to be third-party beneficiaries of the Arbitration Agreement and is entitled to enforce it against Plaintiff here.

## III.  The Arbitration Agreement is Neither Procedurally Nor Substantively Unconscionable.

Despite agreeing to the Terms, Plaintiff resorts to mischaracterizing them and RewardZinga's opt-in flow to argue unconscionability. But just because he finds the Terms unfair does not render them unconscionable. Under New York law,[4] an arbitration provision is only "unconscionable when it 'is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms.'" *Nayal v.*

---

[4] RewardZinga's Terms contain a New York choice-of-law provision. *See* Biechler Decl. Ex. A at 6. Under Georgia law, "choice-of-law provisions in contracts are enforced in the absence of contrary public policy." *Samadi v. MBNA Am. Bank, N.A.*, 178 F. Appx. 863, 865 (11th Cir. 2006) (citation omitted). Plaintiff's unconscionability argument presumes Plaintiff's agreement to RewardZinga's Terms, his Opposition offers no public policy contrary to enforcing the Terms' choice-of-law provision, and the Terms explicitly designate that "New York law controls, without regard to conflicts of law provisions," Beichler Decl. Ex. A at 6. Thus, New York law should be applied. Ultimately, though, whether this Court uses New York or Georgia law to analyze the issue of unconscionability makes no difference. *See Klein v. ATP Flight Sch., LLP*, No. 14-CV-1522 (JFB) (GRB), 2014 U.S. Dist. LEXIS 91102, at *18 (E.D.N.Y. July 3, 2014) ("[T]he Court has conducted a thorough review of both Georgia law and New York law, and has concluded that they do not differ meaningfully on the law of unconscionability.").

*HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009) (quoting *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988)).[5] Despite Plaintiff's attempts to mischaracterize the Terms and Arbitration Agreement as monstrously unequal and inflicted upon him through no choice of his own, nothing in his Opposition meets the bar for procedural or substantive unconscionability.

### A.    Procedural Unconscionability

Procedural unconscionability "requires an examination of the contract formation process and the alleged ***lack of meaningful choice***." *Gillman*, 73 N.Y.2d at 10-11 (emphasis added). Factors include "whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power." *Id.* (citation omitted).

In arguing procedural unconscionability, Plaintiff points to the opt-in flow as a "single-path consumer web funnel that propels users forward with 'Next/Continue' prompts," Opp'n at 15, seeming to disingenuously suggest that he

---

[5] Similarly, under Georgia law, agreements "that actually may be unreasonable or which may lead to hardship on one side" are not unconscionable. *Mathews v. Home Depot USA, Inc.*, 1:22-CV-02605-ELR, 2025 U.S. Dist. LEXIS 82577, at *18 (N.D. Ga. Feb. 14, 2025) (quoting *NEC Techs. v. Nelson*, 267 Ga. 390, 396 (1996)). Instead, an agreement is actually unconscionable when "one side or the other is to be penalized by the enforcement of [] terms of *a contract so unconscionable that no decent, fairminded person would view the ensuing result without being possessed of a profound sense of injustice*" that the court will deny enforcement. *Id*. (quoting *NEC Techs.*, 267 Ga. at 396).

exercised no will of his own despite clicking through five separate pages, two of which required the input of his personal information to continue. *See* Beichler Decl. ¶¶ 12-18, 21.

He further bemoans the fact that the so-called funnel "does not force a scroll through the arbitration language, [] require opening the Terms before proceeding, [or] present a checkbox" requiring agreement to the Terms. Opp'n at 15. But plaintiff's complaints simply describe the characteristics of enforceable "sign-in wrap" agreements,[6] which, like RewardZinga's here, include clearly visible hyperlinked terms that are spatially close to the mechanism for manifesting assent. *See Starke v. Gilt Groupe, Inc.*, 13 Civ. 5497 (LLS), 2014 U.S. Dist. LEXIS 58006, at *9 (S.D.N.Y. Apr. 24, 2014).[7]

In a powerful indication that the Terms are not procedurally unconscionable, Plaintiff had all the time in the world to review the Terms and the Arbitration Agreement therein. Unlike the deceptive or high-pressured tactics which can

---

[6] A "sign-in wrap" agreement is one which does not require checking a box or viewing the terms prior to agreeing to them; instead, nearby language states that clicking the buttons constitutes acceptance of the terms. *See Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 48 (E.D.N.Y. 2017).

[7] *See also Hanson v. Experian Info. Sols., Inc*., No. 1:23-C V-4564-MHC-CMS, 2024 U.S. Dist. LEXIS 132039, at *27 (N.D. Ga. July 22, 2024) ("[T]he Georgia Court of Appeals has held that hyperlinked terms and conditions appearing on registration pages are generally enforceable 'if a reasonable [person] would know that more information would be found if he clicked upon the hyperlink.'" (quoting *Thronton v. Uber Technologies, Inc.*, 359 Ga. App. 790, 794 (2021))).

suggest unconscionability, the path to RewardZinga's Terms was conspicuous –
presented twice, in easy-to-read blue hyperlinked text, directly above the
"Continue" button – and did not involve any external pressure to continue onwards
in the form of a countdown or other pressure tactics. *See Kai Peng*, 237 F. Supp.
3d at 49 ("[T]here was no time limit for Plaintiffs to review the contracts, which
were clearly labeled and available by hyperlink . . . That Plaintiffs clicked on the
button because they were eager to begin driving and earning fares does not mean
that they were coerced or 'compelled to click.'").

In sum, by clicking through RewardZinga's opt-in flow and thereby agreeing
to its Terms, Plaintiff suffered no "lack of meaningful choice" necessary to
demonstrate procedural unconscionability. *Gillman*, 73 N.Y.2d at 11. He was not
pressured, coerced, or compelled to agree to the Terms; the links to the Terms were
clear and conspicuously placed immediately *above* the "Continue" buttons; and the
Terms themselves made no effort to conceal the Arbitration Agreement or class
action waiver, which is flagged in a capitalized, bolded, and underlined notice on
the very first page of the Terms. *See* Beichler Decl., ¶¶ 15, 18-19; *id*. Ex. A at 1.

## B. Substantive Unconscionability

In making a case for substantive unconscionability, Plaintiff's Opposition
paints a picture of "a matrix of one-sided terms," referencing the "distant venue,
delegation sleight-of-hand, unilateral modification, fee and injunction pressures

aimed at collective proceedings, [and] pre-arbitration hurdles." Opp'n at 19. But that presentation of the Terms does not represent reality.[8]

A thorough reading of the Terms significantly reduces and/or eliminates these concerns. For example, for claims of $10,000.00 or less, an individual can "choose whether the arbitration proceeds in person, by telephone or [through] submissions." Beichler Decl. Ex. A at 6. Thus, a consumer need not even leave their home to be able to vindicate his or her rights through arbitration.

Even if in-person proceedings were required, the mere imposition of fees and expenses is insufficient to indicate substantive unconscionability as the party arguing unconscionability "bears the burden of showing the likelihood of incurring" prohibitively expensive costs. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000); *see also Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1291 (11th Cir. 2015) (holding that "[s]peculative fear of high fees" is insufficient to invalidate an arbitration agreement on the grounds of prohibitive expense). Plaintiff has not and cannot meet that burden here

---

[8] Plaintiff's substantive-unconscionability argument is hamstrung at the outset by the fact that the Arbitration Agreement equally binds Plaintiff, RewardZinga, and RewardZinga Marketing Partners to arbitration. *See Sims v. Select Portfolio Servicing*, No. CV 108-064, 2008 U.S. Dist. LEXIS 135587, at *17-18 (S.D. Ga. Sep. 23, 2008) ("[T]he fact that this Arbitration Agreement requires both parties to submit to arbitration strongly suggests that this agreement is not unconscionable. An agreement in which the promises in the agreement are mutual is not unconscionable." (citing *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1377 (11th Cir. 2005))).

as it is unlikely that he would be responsible for any arbitration expenses other than his own, unless he is suggesting that his own claim is *frivolous*. *See* Beichler Decl. Ex. A at 7 (Plaintiff would only be responsible for Excellence Forward's "attorneys' fees and expenses" if "the arbitrator determines" Plaintiff's claims to be "frivolous.").[9]

Plaintiff then argues that the class action waiver, "paired with provisions authorizing injunctions to halt participation in class cases and fee recovery for seeking that relief" are unconscionable due to their chilling effect on small-value TCPA claims. Opp'n at 18. That argument fails because arbitration clauses barring class actions are not substantively unconscionable "when a plaintiff could and would vindicate his rights through arbitration." *Med. Shoppe Int'l v. Mitsopoulos*, No. CV 2004-5207 (ERK)(MDG), 2006 U.S. Dist. LEXIS 116122, at *20 (E.D.N.Y. May 5, 2006) (citation omitted).[10] Here, signatories to the Arbitration

---

[9] The difficulty of travel is likewise unpersuasive without more. *See Klein,* 2014 U.S. Dist. LEXIS 91102, at *23-24 ("[A]lthough arbitrating her claims in Georgia would probably be less convenient for plaintiff than litigating them here, plaintiff has not come close to demonstrating that arbitrating in Georgia would be so burdensome as to deprive her of the opportunity to vindicate her rights." (citing *TradeComet.com LLC v. Google, Inc.*, 693 F. Supp. 2d 370, 381 (S.D.N.Y. 2010))).

[10] *See also Lawrence v. NYC Med. Practice, P.C.*, 1:18-cv-8649-GHW, 2023 U.S. Dist. LEXIS 126558, at *36 (S.D.N.Y. July 21, 2023) ("Arbitration agreements that waive the right to participate in class action proceedings . . . are not per se unconscionable." (citing *Tsadilas v. Providian Nat'l Bank*, 786 N.Y.S. 478, 480 (1st Dep't 2004))); *Kai Peng*, 237 F. Supp. 3d at 58 ("In recent years, the Supreme

Agreement with small-value claims are empowered to vindicate their rights through arbitration for several reasons: (i) virtual arbitration proceedings are guaranteed for claims of less than $10,000.00, (ii) RewardZinga or its Marketing Partners pay "all filing, administration[,] arbitrator fees associated with the arbitration," and reasonable attorney's fees, if the relief granted by the arbitrator is greater than the amount of a final settlement offer, and (iii) RewardZinga and its Marketing Partners will not "seek [attorneys' fees and expenses] unless the arbitrator determines that [the individual's] claim was frivolous." Beichler Decl. Ex. A at 6-7.

The "mandatory 'Initial Dispute Notice' precondition" which Plaintiff argues will "further chill access to remedies," Opp'n at 18, is merely a requirement to contact RewardZinga via email. *See* Beichler Decl. Ex. A at 6. In response to this email, RewardZinga or its Marketing Partners may choose to send a settlement offer. *Id*. Instead of being a "hurdle" to vindicating small-value TCPA claims as Plaintiff claims, this provision sets forth the possibility to resolve individual claims without the cost of arbitration or litigation. Opp'n at 18.

Finally, Plaintiff argues that RewardZinga's ability to unilaterally modify the Terms renders them unconscionable. But one party's ability to unilaterally modify an "agreement does not automatically render the agreement"

Court has issued multiple decisions holding that class action waivers in arbitration agreements are enforceable.").

unenforceable. *Bassett v. Elec. Arts, Inc.*, 93 F. Supp. 3d 95, 106 (E.D.N.Y. 2015). Despite citing to it, *Dasher v. RBC Rank (USA)*, 745 F.3d 1111 (11th Cir. 2014) does not support Plaintiff's argument, as Excellence Forward is not relying on a post-agreement, RewardZinga-Terms modification to compel Plaintiff's claims to arbitration. The only Terms that matter here are the Terms he agreed to on April 10, 2025.

Despite Plaintiff's attempts to misconstrue the Terms and Arbitration Agreement, his Opposition fails to show that either is "grossly unreasonable," such that this Court should refuse to enforce them on the grounds of substantial unconscionability.

## IV.    CONCLUSION

Excellence Forward has provided clear evidence that Plaintiff agreed to a binding and enforceable Arbitration Agreement, to which it is an intended third-party beneficiary. Plaintiff has neither provided any evidence supporting his bald denial nor met his burden of demonstrating that the Terms or Arbitration Agreement are unconscionable. Thus, Excellence Forward respectfully requests that this Court grant its Motion, without the need for discovery or trial, and compel Plaintiff's claims to arbitration in accordance with the Arbitration Agreement. Should the Court find his bald denial sufficient, an expedited evidentiary hearing should be the most efficient means to resolve any alleged disputes of fact.

Dated: October 6, 2025        Respectfully submitted,

BERMAN FINK VAN HORN P.C.

By:   */s/ Benjamin I. Fink*
       Benjamin I. Fink
       Georgia Bar No. 261090

       3475 Piedmont Road, N.E., Suite 1640
       Atlanta, Georgia 30305
       (404) 261-7711
       bfink@bfvlaw.com

       *Counsel for Defendant*

## <u>LOCAL RULE 7.1(D) CERTIFICATION</u>

This Reply was prepared with size 14 Times New Roman font, which is an allowed font size and type under Local Rule 5.1(B).

BERMAN FINK VAN HORN P.C.

By:    */s/ Benjamin I. Fink*
          Benjamin I. Fink
          Georgia Bar No. 261090

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of October 2025, a copy of the foregoing document was served via this Court's Electronic Case Filing (ECF) system upon:

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln St., Suite 2400
Hingham, MA 02043
Email: anthony@paronichlaw.com

Valerie Lorraine Chinn
Chinn Law Firm, LLC
245 N. Highland Ave., Suite 230 #7
Atlanta, GA 30307
Email: vchinn@chinnlawfirm.com

*Counsel for Plaintiff*

BERMAN FINK VAN HORN P.C.

By:    */s/ Benjamin I. Fink*
        Benjamin I. Fink
        Georgia Bar No. 261090